UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**UNITED STATES OF AMERICA**   **CASE NO. 3:24-CR-00267-01**

**VERSUS**   **JUDGE TERRY A. DOUGHTY**

**KEYSHAWN LENARD (01)**   **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM ORDER**

Before the Court is a Motion to Dismiss Indictment [Doc. No. 18] filed by Defendant Keyshawn Lenard. ("Lenard"). An Opposition [Doc. No. 21] was filed by the United States (the "Government"). Lenard filed a Reply [Doc. No. 22].

For the reasons set forth below, Lenard's Motion is **DENIED**.

## I. BACKGROUND

On December 11, 2024, a federal grand jury returned an Indictment charging Lenard with violating Possession of a Firearm and Ammunition by a Convicted Felon.[1] At the time of Lenard's arrest and federal indictment, he had three prior felony convictions on two different dates.[2] The first was in 2017 and was an Attempted Simple Burglary, 2 counts, and three years hard labor suspended, three years' probation.[3] The second was in 2021 and was Aggravated Assault with a Firearm, five years suspended, and three years' probation. On October 1, 2021, Lenard's probation was revoked, and his sentence was imposed.[4] He served his sentence from October 1, 2021, until November 19, 2024.[5]

---

[1] [Doc, No. 1].
[2] [Doc. No. 21].
[3] [*Id.*].
[4] [Doc. No. 21-1].
[5] [*Id.*].

## II. LAW & ANALYSIS

Lenard claims that he is protected by the Second Amendment, and 18 U.S.C. §922(g)(1) infringes upon his fundamental right to possess and use a firearm for personal protection and defense.[6] Lenard principally relies on the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024).[7] Lenard also points to the recent Fifth Circuit case of *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) which illustrates the framework lower courts must apply to "as-applied" challenges to charges brought under §922(g)(1).[8] Thus, Lenard argues that the statute is unconstitutional, as applied, unless the Government demonstrates that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to Lenard.[9]

The Government opposes the Motion and alleges that Lenard is the type of "dangerous" person the Second Amendment excludes and applying §922(g)(1) to Lenard is squarely consistent with this Nation's historical tradition of firearm regulation.[10]

The issues have been briefed and the Court is prepared to rule.

### A. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. (12)(b)(1). Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense." *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v))

---

[6] [Doc. No. 18].
[7] [*Id.*].
[8] [*Id.*, p. 3].
[9] [*Id.,* p. 4].
[10] [Doc. No. 21, p. 12].

(cleaned up). A court may resolve such defects before trial when the motion presents a question of law. *See United States v. Fontenot,* 665 F.3d 640, 644 (5th Cir. 2011). The central issue here falls squarely within that ambit—whether applying §922(g)(1) to Lenard comports with the principles underpinning our Nation's tradition of firearm regulation.

### B. The Second Amendment

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court read this language to "protect the right of law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 635 (2008).[11] However, the Court made clear that the right is not unlimited. *Id*. at 626.

The Court established a two-step framework for Second Amendment constitutional challenges in *Bruen*. 597 U.S. at 19-24. First, courts must consider whether "the Second Amendment's plain text covers an individual's conduct." *Id*. at 24. If so, "the Constitution presumptively protects that conduct," and the Government must bear the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. However, the Government must only point to a "well-established and representative historical analogue, not a historical twin." *Id*. at 30. In assessing similarity, courts must look to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. at 29.

---

[11] Indeed, the right the Second Amendment sought to protect existed far before the ratification of the Bill of the Rights. Several provisions in the Bill of Rights were "understood as declaratory, inserted simply out of an abundance of caution to clarify pre-existing constitutional understandings." Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 28 (1998).

### C. The Constitutionality of § 922(g)(1) as Applied to Lenard

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear that felons are among "the people" protected by the Second Amendment. *Diaz*, 116 F. 4th at 466-467. Thus, the first part of the analysis stops there.

Next, the Court must consider whether any historical examples "impose a comparable burden on the right of armed self-defense" during the Second Amendment's ratification. *Bruen*, 597 U.S. at 27. Lenard's pertinent criminal history includes attempted simple burglary and aggravated assault with a firearm.[12] Thus, the Government must show that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Lenard. *Diaz*, 116 F. 4th at 467. Importantly, the historical examples discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals that may pose a risk of violence or otherwise threaten public safety. *See id.* at 469.[13] In other words, the analogs demonstrate a "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700.

Here, Lenard's prior offenses of aggravated assault with a firearm and attempted simple burglary establishes the requisite nexus to public safety. And the Government has sufficiently carried its burden under *Bruen* to show a longstanding tradition of regulating someone with a criminal history analogous to Lenard.

---

[12] [Doc. No. 18].

[13] The Fifth Circuit in *Diaz* made at least three distinct and relevant points. First, the Fifth Circuit explained that historical laws which authorized capital punishment and estate forfeiture following felony convictions were "justified by the need to adequately punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Diaz*, 116 F. 4th at 469. Second, state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id*. Finally, the *Diaz* court considered the Supreme Court's finding in *Rahimi* that "going armed punished those who had menaced others with firearms because such actions disrupted the public order and led almost necessarily to actual violence." *Id*. at 470 (cleaned up).

First, the Government compares Lenard's prior convictions of attempted simple burglary and aggravated assault with a firearm to Founding-era laws and punishment. For instance, early American justice-of-the-peace manuals empowered justices to confiscate persons who carried firearms in a manner that spread fear or terror, like in this case, aggravated assault.[14] Additionally, the Government explains that early legislatures authorized death or estate forfeiture for crimes of robbery and burglary, which were common-law felonies. *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024); Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 & nn.275–76 (2014) (collecting statutes). Essentially, if a death sentence was permissible to respond to burglary, "then the lesser restriction of permanent disarmament that §922(g)(1) imposes is also permissible." *Wilson*, 2024 WL 4436637 at 4 (citing *Diaz*, 116 F.4th at 469). Thus, the Founding-era laws cited by the Government sufficiently qualify as "relevant evidence" that shows our country has a historical tradition of severely punishing people like Lenard who have been convicted of burglary. *Diaz*, 116 F.4th at 469.

Again, the Government only needs to find a "historical analogue, not a historical twin." *Bruen*, 597 U.S. at 30. And it has done so. Moreover, Lenard clearly falls into the category of those who "present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. Thus, the Court finds that the Second Amendment does not preclude the enforcement of §922(g)(1) to Lenard.

Finally, this Court is not alone in holding §922(g)(1) constitutional as applied to defendants with prior convictions resembling Lenard's criminal history. *See United States v. Powell*, 2024

---

[14] *See, e.g.,* James Davis, *The Office and Authority of a Justice of Peace* 5 (1774) (N.C.); Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer* 12-13 (1773) (Mass.); William Waller Hening, *The New Virginia Justice* 18 (1795) (Va.); Eliphalet Ladd, Burn's Abridgement, or the American Justice 22-24 (2d ed. 1792) (N.H.; James Parker, *Conductor Generalis* 12 (1764) (N.J.); James Parker, *Conductor Generalis* 12 (Robert Hodge printing 1788) (N.Y.); James Parker, *Conductor Generalis* 11 (Robert Campbell printing 1792) (Pa.).

WL 4502226 at *3 (D.D.C. Oct. 16, 2024) (upholding a finding that § 922(g)(1) was constitutionally applied to a defendant previously convicted of Assault with a Dangerous Weapon). *See also United States v. Waulk*, 2024 WL 3937489, at *7 (W.D. Pa. Aug. 26, 2024) (same for predicate convictions of Robbery and Aggravated Assault). *See also United States v. Leslie*, 2024 WL 1718062, at *6 (E.D. Pa. Apr. 22, 2024) (same for predicate conviction of Aggravated Assault). Nor is the list of examples exhaustive. Those courts reason, as the Court does here, that aggravated assault with a firearm raise the risk of violence, and Congress has traditionally addressed that risk by dispossessing these offenders of firearms. Thus, Lenard's prior felonies establish the requisite nexus to public safety.

Therefore, Lenard's as-applied challenge fails because the Government has met its burden to show that applying §922(g)(1) to Lenard is consistent with the principles that underpin our Nation's tradition of firearm regulation.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Lenard's Motion [Doc. No. 18] is **DENIED**.

MONROE, LOUISIANA, this 14th day of February, 2025.

Terry A. Doughty
United States District Judge